IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATHANIEL LEKAI HART, #370145,       *

    Plaintiff,                                  *

v                                              *          Civil Action No. GLR-14-727

BOBBY P. SHEARIN,                  *

    Defendant.                               *

**MEMORANDUM OPINION**

Pending before the Court is Defendant Bobby Shearin's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.[1] (ECF No. 8). The Court, having reviewed the Motions and supporting documents, finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, the Motion will be granted.

**I. BACKGROUND**

Self-represented Plaintiff Nathaniel Lekai Hart, an inmate at North Branch Correctional Institution ("NBCI"), alleges a violation of his constitutional right of access to the courts pursuant to 42 U.S.C. § 1983 (2012).[2] Hart asserts he was unable to file a timely Application for Leave to Appeal his February 12, 2013 resentencing in the Circuit Court for Montgomery County, Maryland, because he was denied access to the prison library by Shearin and prison staff. (See Compl. at 3, ECF 1). Hart further asserts he was unable to type and file his appeal in a timely matter because the prison was in lock-down status between February 12, 2013 and

---

[1] Also pending, is a January 23, 2015 Motion for Leave to File an Amended Complaint. (ECF 22). The Motion is in essence a supplement to the opposition, and will be granted as such by separate Order.

[2] Bobby Shearin, formerly warden of NBCI, was warden during the time period at issue.

March 19, 2013.[3]  As relief, Hart is seeking compensatory and punitive damages of $10 million.

## II. DISCUSSION

**A.     <u>Standard of Review</u>**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S. at 556.  "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993).

"When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 260-61 (4th Cir. 1998) (alteration in original) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted).  Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

---

[3]  Hart pleaded guilty to first-degree rape on July 15, 2011, in the Circuit Court for Montgomery County.  He was sentenced to life imprisonment with execution of all but ninety years suspended.  Hart filed an Application for Leave to Appeal, and on October 22, 2012, the Court of Special Appeals of Maryland vacated his sentence and remanded the case for resentencing. (ECF 4, p. 4).  Hart was resentenced on February 12, 2013 to life imprisonment with all but thirty-eight years suspended. Hart filed an Application for Leave to Appeal in the Court of Special Appeals of Maryland on March 19, 2013. On November 6, 2013, the Application was dismissed as filed more than thirty days after entry of sentencing. <u>See</u> http://casesearch.courts.state.md.us/ inquiry/inquiry Detail.jis?caseId=115124C&loc=68&detailLoc=MCCR.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (alteration in original).

A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

Here, because the Court will consider matters outside of the pleading, Shearin's Motion will be construed as a Motion for Summary Judgment.

**B.    Analysis**

Shearin argues he is entitled to summary judgment on the basis of (1) Hart's failure to exhaust administrative remedies; (2) Hart's failure to establish that Shearin maintained any personal involvement in the alleged violation; (3) Hart's failure to establish that he was deprived access to the courts; and (4) qualified immunity as to all claims.

3

1. **Failure to Exhaust Administrative Remedies**

First, Shearin argues the Complaint should be dismissed because Hart failed to pursue his administrative remedies to the highest available level. The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, requires prisoners to exhaust "such administrative remedies as are available" prior to filing suit in federal court challenging prison conditions. 42 U.S.C. § 1997e(a) (2012). Exhaustion requires inmates to pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.[4] Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004). A claim which has not been exhausted may not be considered by the Court. See Jones v. Bock, 549 U.S. 199, 219-20 (2007).

Here, on February 6, 2014, Hart filed ARP NBCI 0486-14 complaining that he was denied access to the prison library and, as a result, was unable to file his appeal in a timely fashion. (Pl.'s Mot. to Deny Def.'s Mot. Dismiss ["Opp'n"] Ex. B, at 7, ECF 12-2). On February 10, 2014, Hart received a response to the ARP seeking additional information concerning when and by whom he was denied access. (Id. at 8). On February 14, 2014, Hart resubmitted ARP NCBI 0486-14 indicating that he was denied access to the library during the prison lock-down between February and March of 2013. (See id. at 9). The ARP was then dismissed as untimely. (Id.).

Scott Oakley, Executive Director of the IGO, attests that Hart did not appeal the denial of ARP NCBI 0486-14. (Oakley Decl. Ex. 5, ECF No. 8-5). Hart, however, maintains that he did

---

[4] Filing a request for administrative remedy is the first of three steps in the Administrative Remedy Process ("ARP") provided by the Maryland Division of Correction ("DOC"). If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If the first level appeal is denied, the prisoner has thirty days in which to file an appeal to the Inmate Grievance Office ("IGO"). An order of dismissal constitutes a final decision for purposes of judicial review. C.S. § 10–207(b)(2)(ii).

appeal the denial of ARP NCBI 0486-14. Further, Hart asserts that Oakley does not always respond to ARP appeals. (Opp'n Ex. A, at 1-2, ECF 12-1). In support of this contention, Hart has attached an affidavit of fellow inmate Donald R. Peuia, therein testifying that Oakley does not consistently respond after receiving a grievance complaint. (Opp'n Ex. B, at 4). Given these circumstances, the Court finds a genuine issue of material fact exists such that dismissal of the case based on Hart's failure to exhaust administrative remedies is inappropriate.

### 2. Constitutionally Protected Right of Access to the Courts

Next, Shearin argues Hart cannot establish that he was denied the fundamental constitutional right of access to the courts. The Court agrees.

"Section 1983 provides that '[e]very person,' who, under color of state law causes the violation of another's federal rights shall be liable to the party injured by his conduct. Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 402 (4th Cir. 2014). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979)). To state a claim under § 1983, a plaintiff must allege (1) a right secured by the Constitution or laws of the United States was violated; and 2) that the alleged violation was committed by a "person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

It is well established that inmates have a constitutionally protected right of access to the courts. See Bounds v. Smith, 430 U.S. 817, 828 (1977). This requires "prison officials 'to provide indigent inmates with access to a reasonably adequate law library for preparation of legal actions.'" Id. at 829 (quoting Wolff v. McDonnell, 418 U.S. 539, 578-79 (1974)). There are, however, other acceptable means to assure meaningful access to the courts. See id.

Here, Hart alleges he missed court filing deadlines because he was denied access to the library when the prison was in lockdown status. Hart does not specify what legal materials he needed or why his inability to visit the law library prevented him from filing a timely Application for Leave to Appeal. Further, Shearin contends that Hart maintained the ability to request legal research material from the NBCI library during the prison lockdown, but failed to do so. Rebecca Hammons, NCBI Correctional Librarian, testified that inmates may write to the librarian via the institutional mail process to request materials. Additionally, she asserts that Hart made no requests for legal materials between January 15, 2013 and March 21, 2013. (Hammons Decl. Ex. 1, ECF No. 8-2). Hart failed to offer any evidence either refuting Hammons's assertion or establishing that Shearin or corrections staff impeded his efforts to obtain materials through this process. Thus, no evidence in the record supports Hart's allegation that he was unconstitutionally denied access to the library. Therefore, Hart has failed to establish that he has been denied a right secured by the Constitution or laws of the United States as required by § 1983.

Even assuming Hart could establish that a right secured by the Constitution was violated, § 1983 requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. See Monell v. N.Y. City Dep't of Social Servs., 436 U.S. 658, 690 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be affirmatively shown the official acted personally to deprive the plaintiff's rights). Thus, to the extent Hart seeks to hold Shearin responsible due solely to his role as a prison administrator, a claim based on the doctrine of respondeat superior has no place in § 1983 litigation. See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior

liability under § 1983); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Hart has provided no evidence demonstrating supervisory liability on the part of Shearin.

Because Hart has failed to establish that Shearin personally deprived him of his constitutional right of access to the courts, Shearin is entitled to qualified immunity. See Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

### III. CONCLUSION

For the foregoing reasons, Shearin's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 8) will be GRANTED. Judgment will be entered in favor of Defendant and this case will be CLOSED by Order to follow.

February 20, 2015  
Date

/s/  
_____  
George L. Russell, III  
United States District Judge